FILED - CLERK     1
U.S. DISTRICT COURT

94 SEP 12  AM 2: 26 CK

1           UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF TEXAS - BEAUMONT
2                   BEAUMONT DIVISION

3

4    UNITED STATES OF AMERICA  )   CRIMINAL DOCKET NO.
                               )   1:94-cr-12 (2)
5                              )
                               )
6    VS                        )   BEAUMONT, TEXAS
                               )
7                              )
                               )
8    ANDRE DONNELL ROUTT, A/K/A)
     ANDREW JOHNSON (2),       )   AUGUST 19, 1994
9    DEFENDANT                 )   4:20 P.M.

10   *************************************************************

11              TRANSCRIPT OF SENTENCING
           BEFORE THE HONORABLE HOWELL COBB
12            UNITED STATES DISTRICT JUDGE

13   *************************************************************

14   APPEARANCES:

15   FOR THE GOVERNMENT:        MALCOM BALES
                                A.U.S.A.
16                              350 MAGNOLIA, SUITE 150
                                BEAUMONT, TX 77701
17

18   FOR THE DEFENDANT:         DENISE M. BENSON
                                FEDERAL PUBLIC DEFENDER
19                              300 WILLOW, SUITE 227
                                BEAUMONT, TX 77701
20

21   COURT REPORTER:            WENDELL R. PARKS, CP, CM
                                FEDERAL COURT REPORTER
22                              ROOM 217 FEDERAL COURTHOUSE
                                300 WILLOW
23                              BEAUMONT, TEXAS 77701

24
     PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY;
25   TRANSCRIPT PRODUCED BY COMPUTER.

173

173

2

1    AUGUST 19, 1994                              4:20 P.M.

2              THE COURT:  MR. ANDRE ROUTT.

3              HAVE YOU HAD AN OPPORTUNITY TO REVIEW YOUR

4    PRESENTENCE INVESTIGATION REPORT, MR. ROUTT?

5              THE DEFENDANT:  YES, SIR.

6              THE COURT:  AND MS. BENSON?

7              MS. BENSON:  YES, YOUR HONOR.

8              THE COURT:  I'M GOING TO TAKE UP THE OBJECTIONS

9    IN A FEW MOMENTS, BUT BEFORE I DO, ARE THERE ANY

10   AMENDMENTS, SUGGESTIONS, CORRECTIONS, ADDITIONS THAT YOU

11   WISH TO MAKE?

12             MS. BENSON:  AS REGARDING MY OBJECTIONS OR JUST

13   REGARDING THE PRESENTENCE REPORT?

14             THE COURT:  NO.  NO, REGARDING THE REPORT.

15             MS. BENSON:  NO, YOUR HONOR.

16             THE COURT:  OR YOU, MR. ROUTT?

17             THE DEFENDANT:  NO, SIR.

18             THE COURT:  THE DEFENDANT AS TO THE FIRST

19   OBJECTION OBJECTS TO PARAGRAPHS ELEVEN, TWELVE, THIRTEEN,

20   FOURTEEN, EIGHTEEN, TWENTY-THREE AND THIRTY-FOUR, WHEREIN

21   RELEVANT CONDUCT IS CONSIDERED FROM 1987 TO '89, TWO TO

22   FOUR YEARS BEFORE THE ALLEGED CONSPIRACY BEGAN IN JANUARY

23   OF 1991, AND THE DEFENDANT MAINTAINS THE USE OF THIS

24   INFORMATION SHOULDN'T BE CONSIDERED, THAT IS, AS IT'S NOT

25   WITHIN THE MEANING OF THE UNITED STATES SENTENCING

3

1    GUIDELINE, SECTION 1(B)(1.3)(A)(2).

2            VARIOUS CASE LAW IS CITED CONCERNING THE

3    DEFENDANT'S ARGUMENT ABOUT HIS DRUG ACTIVITY PRIOR TO

4    1991 NOT BEING RELEVANT.

5            THE GUIDELINES, PARAGRAPH 1(B)(1.3)(A)(2),

6    PROVIDE THAT THE OFFENSE LEVEL ADJUSTMENT SHALL BE

7    DETERMINED ON THE BASIS OF ALL ACTS COMMITTED BY THE

8    DEFENDANT THAT OCCURRED DURING THE COMMISSION OF THE

9    OFFENSE OF CONVICTION OR IN PREPARATION.

10           THE COMMENT NOTE 9 PROVIDES FACTORS THAT ARE

11   APPROPRIATE TO THE DETERMINATION OF WHETHER OFFENSES ARE

12   SUFFICIENTLY CONNECTED OR RELATED TO EACH OTHER TO BE

13   CONSIDERED AS A PART OF THE SAME COURSE OF CONDUCT, TO

14   INCLUDE THE DEGREE OF SIMILARITY OF THE OFFENSES AND THE

15   TIME INTERVAL.

16           THE DEFENDANT DOES NOT DENY THAT HE WAS

17   INVOLVED IN DRUG TRANSACTIONS FROM 1987 UP TO 1991, WHICH

18   IS THE DATE MENTIONED IN THE OFFENSE OF CONVICTION.  HE

19   MERELY MAINTAINS IT'S NOT RELEVANT TO THIS OFFENSE.

20           IN 1987 THE DEFENDANT DEVELOPED A DRUG BUSINESS

21   WITH SEVERAL INDIVIDUALS, INCLUDING DELVIN LIVINGSTON.

22   THE DEFENDANT'S DRUG SPREE HAS BEEN GOING ON SINCE THAT

23   YEAR.

24           WHILE THE DEFENDANT ATTEMPTS TO SEPARATE HIS

25   PRIOR DRUG TRANSACTIONS WITH THE OFFENSE OF CONVICTION BY

4

1    MAINTAINING THAT THE PRIOR BEHAVIOR OCCURRED FOUR YEARS

2    BEFORE THE INVOLVEMENT IN THIS MATTER, THAT CONTENTION

3    ISN'T TRUE.

4        THE DEFENDANT CONTINUOUSLY DEALT DRUGS BY WAY

5    OF COOKING CRACK COCAINE OR DISTRIBUTING CRACK COCAINE OR

6    POWDER COCAINE FROM 1987 UNTIL THE DATE THAT HE WAS

7    IMPRISONED.

8        THE DEFENDANT WAS INCARCERATED FROM JULY 10,

9    1990, IN THE STATE PRISON SYSTEM, AND WAS RELEASED SEVEN

10   MONTHS LATER ON FEBRUARY 15, 1991, AND ACCORDING TO

11   LIVINGSTON, AS WELL AS THE FACTS OF THIS CASE, THE

12   DEFENDANT BEGAN DEALING DRUGS IMMEDIATELY FOLLOWING HIS

13   RELEASE FROM IMPRISONMENT, AND AS SUCH, THE ONLY TIME

14   LAPSE THERE'S BEEN SINCE MAY, 1987, TO MAY, 1992, WAS A

15   SEVEN MONTH PERIOD OF INCARCERATION.

16       CONSIDERING HIS HEAVY DRUG ACTIVITY BEFORE

17   IMPRISONMENT, AS WELL AS AFTERWARDS, IT'S REASONABLE TO

18   ASSUME THAT HAD HE NOT BEEN INCARCERATED HE WOULD HAVE

19   STILL BEEN DEALING DRUGS.  SO, THE EVIDENCE TENDS TO

20   SATISFY THE REQUIREMENTS OF TEMPORAL PROXIMITY.

21       ALL OF MY FINDINGS, RULINGS ON THE PRESENTENCE

22   INVESTIGATION REPORT AND THE OBJECTIONS THERETO ARE BASED

23   UPON A PREPONDERANCE OF THE EVIDENCE BEFORE ME AND ON THE

24   TRIAL, MY RECOLLECTION OF THE RECORD IN THE TRIAL OF THE

25   CASE, AND UPON THE PRESENTENCE INVESTIGATION REPORT,

5

1    WHICH HAS SUFFICIENT INDICIA OF RELIABILITY AND

2    TRUSTWORTHINESS THAT I CAN AND DO FIND THAT IT'S PROBABLY

3    ACCURATE, AND I ADOPT IT AND I FIND THAT IT IS CORRECT.

4            NOW, REGARDING SIMILARITY AND REGULARITY, WHILE

5    THE DEFENDANT MAINTAINS THAT THE PLAYERS AND THE TYPES OF

6    DRUGS IN THE PREVIOUS ACTIVITY WERE DIFFERENT FROM THE

7    PLAYERS AND THE DRUGS IN THE OFFENSE OF CONVICTION, THIS

8    ALSO IS NOT TRUE.

9            BEFORE THE INDICTMENT, THE DEFENDANT'S

10   ACTIVITIES INCLUDED NUMEROUS PARTICIPANTS, SOME OF WHOM

11   ARE THE SAME INDIVIDUALS LISTED IN THE INDICTMENT.

12           FOR INSTANCE, AT DIFFERENT TIMES FROM '87 TO

13   '90 THE DEFENDANT PARTICIPATED IN DRUG TRANSACTIONS WITH

14   LIVINGSTON, TIFFANY SHEPHARD, EDDIE GARCIA, MARIA LOPEZ,

15   GERALD DUFFY, TONY BERRY AND OTHER INDIVIDUALS IN

16   HOUSTON, WACO AND IN MISSISSIPPI.

17           ACCORDING TO DELVIN LIVINGSTON, AS WELL AS THE

18   DEFENDANT, ALL OF THE INDIVIDUALS JUST NAMED WERE ALSO

19   PARTICIPANTS IN HIS ACTIVITIES FROM JANUARY OF '91 TO MAY

20   OF 1992, THE TIME FRAME LISTED IN THE INDICTMENT.

21           REGARDING THE SUBSTANCE AS BEING DIFFERENT,

22   DELVIN LIVINGSTON ADVISED THAT THEY'VE ALWAYS SOLD CRACK

23   COCAINE AND POWDER COCAINE.

24           INFORMATION IN THE PRESENTENCE REPORT INDICATES

25   THAT DURING THE TIME DELVIN LIVINGSTON ASSISTED ANDREW

6

1   ROUTT AND "BONNIE BOO" IN THEIR OPERATIONS, AT LEAST

2   FIFTEEN PERCENT OF THOSE CONTROLLED SUBSTANCES WHICH WERE

3   DISTRIBUTED WAS POWDER COCAINE AND EIGHTY-FIVE PERCENT

4   WAS CRACK COCAINE.

5        AS WELL, DELVIN LIVINGSTON MAINTAINS THAT HE,

6   THE DEFENDANT AND EDDIE GARCIA WERE PARTNERS.

7        ALTHOUGH LIVINGSTON AND GARCIA DISTRIBUTED

8   MOSTLY POWDER COCAINE, THE DEFENDANT STILL DISTRIBUTED

9   CRACK COCAINE.

10       WHILE IT'S TRUE THAT LIVINGSTON DID NOT TESTIFY

11  TO CERTAIN THINGS AT TRIAL, IT'S NOTED THAT HE WAS NEVER

12  ASKED SPECIFIC QUESTIONS BY EITHER THE PROSECUTION OR

13  DEFENSE REGARDING THE VARIOUS MATTERS THAT THE DEFENDANT

14  HAS OBJECTED TO IN THE PRESENTENCE REPORT.

15       THE PROBATION OFFICER HAS REQUIRED ABOUT THESE

16  SPECIFICS DURING THE PRESENTENCE INTERVIEW TO FIND OUT

17  UNDER THE GUIDELINES WHAT THE PERTINENT AND RELEVANT

18  FACTS WERE.

19       SENTENCING JUDGES ARE NOT RESTRICTED TO

20  INFORMATION THAT WOULD BE ADMISSIBLE AT TRIAL AND ANY

21  INFORMATION WHICH MAY BE CONSIDERED UNDER THE GUIDELINES.

22  AS LONG AS IT HAS SUFFICIENT INDICIA OF RELIABILITY AND

23  TRUSTWORTHINESS TO SUPPORT ITS PROBABLE ACCURACY, THEN

24  THE JUDGE CAN ADOPT IT AND USE IT AND FIND THAT IT'S

25  CORRECT.

7

1      RELIABLE HEARSAY MAY BE CONSIDERED IN A

2   PRESENTENCE INVESTIGATION REPORT IN ASSESSING A SENTENCE,

3   WHILE IT MIGHT NOT BE ADMISSIBLE IN COURT.

4      I FIND THAT THE DEFENDANT'S DRUG ACTIVITY

5   STEMMING FROM 1987 TO THE MID-1990S IS RELEVANT CONDUCT

6   AND IS TO BE CONSIDERED FOR THE PURPOSES OF THE

7   DEFENDANT'S GUIDELINE SENTENCING RANGE.

8      SPECIFICALLY, THE COURT DETERMINES AND FINDS

9   THAT THE EQUIVALENT OF 4363.40 KILOGRAMS OF COCAINE

10  POWDER CAN BE AND IS ATTRIBUTED TO THE DEFENDANT, AS THIS

11  IS THE DRUG BEHAVIOR THAT OCCURRED PRIOR TO 1991.

12     AND I FIND FURTHER THAT THIS RELEVANT CONDUCT

13  PASSES THE TEST OF SIMILARITY, REGULARITY AND TEMPORAL

14  PROXIMITY.

15     AND I FIND THAT THE INFORMATION PROVIDED BY

16  DELVIN LIVINGSTON AND OTHERS, BUT PARTICULARLY

17  LIVINGSTON, REGARDING THE DEFENDANT'S PRIOR RELATED DRUG

18  ACTIVITY, HAS SUFFICIENT INDICIA OF RELIABILITY AND

19  TRUSTWORTHINESS TO SUPPORT AND TO INDICATE TO THIS COURT

20  ITS PROBABLE ACCURACY, AND IT IS TO BE USED IN

21  CALCULATING THE DEFENDANT'S GUIDELINE IMPRISONMENT RANGE.

22     AND THEREFORE, OBJECTION NUMBER ONE IS IN ALL

23  THINGS OVERRULED AND DENIED.

24     MR. BALES:  YOUR HONOR, IF I MIGHT INTERRUPT

25  JUST A MOMENT, IT DOESN'T HAVE ANY IMPACT OR IMPORT AS TO

8

1    YOUR RULING, BUT I NOTICED IN THE RESPONSE TO THE

2    OBJECTION THAT IT'S LISTED THAT TONY BERRY PARTICIPATED

3    IN DRUG TRANSACTIONS FROM '87 TO '90.  WHETHER MR.

4    ARMSTRONG MISUNDERSTOOD LIVINGSTON OR HE MISSPOKE, I DO

5    NOT BELIEVE THAT THAT IS ACCURATE.

6              IT DOESN'T REALLY MATTER I DON'T THINK AS TO

7    THE COURT'S RULING, BUT BERRY TESTIFIED, AND I BELIEVE

8    THAT HE WOULD NOT HAVE BEEN INVOLVED WITH ANDREW ROUTT OR

9    THESE PEOPLE UNTIL 1991.

10             THE COURT:  WELL, THAT MAY BE TRUE AS TO BERRY.

11             MR. BALES:  YES, SIR.

12             THE COURT:  BUT IT ISN'T TRUE AS TO LIVINGSTON

13   AND GARCIA.

14             MR. BALES:  CORRECT.  I JUST WANTED THE RECORD --

15             THE COURT:  ALL RIGHT.

16             MR. BALES:  I DON'T WANT THERE TO BE ANY

17   SITUATION WHERE THAT MIGHT --

18             THE COURT:  I'M NOT RELYING ON BERRY BECAUSE

19   BERRY'S TESTIMONY IS DIFFERENT THAN, I MEAN, EACH OF

20   THEM, THAT IS, GARCIA, DUFFY, BERRY, AND I DON'T KNOW

21   WHETHER -- KING IS STILL ON APPEAL I BELIEVE.

22             MR. BALES:  YES, SIR.  I JUST --

23             THE COURT:  I CONSIDER ALL OF THEM IN THEIR

24   TOTALITY, NOT TRYING TO ASSIGN A SPECIFIC PERIOD OF TIME

25   THAT EACH WITNESS TESTIFIED TO, AND TO THE EXTENT THAT BY

1    MENTIONING BERRY THAT IT EXTENDED PRIOR TO 1991 AND BERRY

2    SAYS NO, THEN, OF COURSE, YOU'RE CORRECT ON THAT.

3              BUT AS TO THE OTHERS, YES, THERE IS -- IT DOES

4    CONNECT HIM UP FROM '87 FORWARD, TO WHEN THE CONSPIRACY

5    WAS ENDED.

6              MR. BALES:  YES, SIR.  SO THAT I AM CLEAR, THE

7    GOVERNMENT'S POSITION IS, WE AGREE WITH THE COURT'S

8    RULING, I JUST -- INSOFAR AS BERRY BEING SOMEONE WHO

9    DEALT WITH MR. ROUTT AT THAT TIME, I THINK THAT'S A

10   MISTAKE, AND I WANTED TO MAKE THAT CLEAR.

11             THE COURT:  ALL RIGHT.  THE DEFENDANT OBJECTS

12   TO PARAGRAPH THIRTY-FIVE, WHERE HE'S GIVEN A TWO-LEVEL

13   ENHANCEMENT FOR POSSESSING A FIREARM.  THE DEFENDANT

14   ADVISES THAT THERE WAS NO TESTIMONY AT TRIAL ACCUSING HIM

15   OF POSSESSING A FIREARM.

16             THE 1989 AGGRAVATED ASSAULT CONVICTION, WHICH

17   INVOLVED A FIREARM, SHOULD NOT BE CONSIDERED THE DEFENDANT

18   SAYS, AS HE WAS PUNISHED FOR THE SAME AND THE INCIDENT

19   DID NOT INVOLVE DRUGS.

20             THE DEFENDANT ALSO OBJECTS TO PARAGRAPH

21   THIRTY-SEVEN, WHERE HE'S GIVEN A FOUR-LEVEL ENHANCEMENT

22   FOR HAVING A LEADERSHIP ROLE.  HE CONTENDS THAT DELVIN

23   LIVINGSTON WAS THEIR MAIN LEADER AND THAT HE DELIVERED

24   ALL THE MONEY AND ALL THE BUYING OF THE DRUGS.

25             SINCE LIVINGSTON WAS THE MASTERMIND, AS THE

10

1    DEFENDANT SAYS, HE FEELS THAT HE SHOULD RECEIVE A

2    TWO-LEVEL ENHANCEMENT ONLY.

3            JUST A MOMENT.

4            MR. ARMSTRONG --

5            PROBATION OFFICER:  YES, SIR.

6            THE COURT:  WILL YOU EXCUSE ME A MOMENT?  I

7    WANT TO CONFER WITH MR. ARMSTRONG.

8            (OFF-THE-RECORD DISCUSSION BETWEEN THE COURT

9    AND THE PROBATION OFFICER)

10           THE COURT:  IF A DANGEROUS WEAPON UNDER THE

11   GUIDELINES, 2(B)(1.1)(B)(1), IS POSSESSED, THE GUIDELINES

12   REQUIRE THE GUIDELINE TOTAL TO BE INCREASED BY TWO

13   LEVELS.

14           CONCERNING THE COURSE OF CONDUCT AS TO

15   LIVINGSTON BEING THE MASTERMIND AND SO ON, I'VE ALREADY

16   MADE A FINDING ON THIS POINT AS TO WHETHER THE PRIOR

17   ACTIVITIES ARE RELATED TO THE OFFENSE OF CONVICTION.

18           THE DEFENDANT'S ASSAULT IN 1989 PROVES HE

19   POSSESSED GUNS DURING THE CONSPIRACY.  ALTHOUGH IT DIDN'T

20   INVOLVE A DRUG TRANSACTION, CERTAINLY THE DEFENDANT

21   NEVERTHELESS HAD A FIREARM.

22           HIS DRUG DEALING SEEMS TO HAVE BEEN ROUTT'S

23   LIVELIHOOD, BY THE EVIDENCE OF HIS LACK OF PREVIOUS

24   EMPLOYMENT.  IT'S REASONABLE TO ASSUME THAT HE POSSESSED

25   GUNS DURING MOST OF THE DRUG DEALS.  IN FACT, HE

1    POSSESSED A FIREARM ON NOVEMBER 12, 1988, WHEN HE WAS

2    ARRESTED FOR UNLAWFULLY CARRYING A WEAPON AND POSSESSION

3    OF DRUGS.

4         NOW, MORE TO THE POINT, LIVINGSTON MAINTAINS HE

5    SOLD THE DEFENDANT A NINE MILLIMETER FIREARM IN 1991,

6    WHICH WAS DURING THE TIME FRAME OF THE OFFENSE OF

7    CONVICTION.

8         EVEN IF THE DEFENDANT DID NOT PURCHASE A NINE

9    MILLIMETER HANDGUN, HE ADMITTED IN THE PRESENTENCE

10   INTERVIEW WITH THE PROBATION OFFICER THAT LIVINGSTON

11   CARRIED A NINE MILLIMETER GUN AT SOME POINT.

12        AS A DEADLY WEAPON WAS POSSESSED BY HIS

13   CO-DEFENDANT, ENHANCEMENT WOULD BE APPLICABLE TO THIS

14   DEFENDANT, AS IT WAS REASONABLY FORESEEABLE TO ROUTT THAT

15   LIVINGSTON POSSESSED A FIREARM DURING THEIR

16   JOINTLY-UNDERTAKEN CRIMINAL ACTIVITY IN DRUG DEALING.

17        CONCERNING THE DEFENDANT'S ATTEMPT TO MINIMIZE

18   HIS ROLE BY CHARACTERIZING DELVIN LIVINGSTON AS THE MAIN

19   LEADER, THERE CAN BE AND OFTEN ARE MORE THAN ONE PERSON

20   THAT CAN QUALIFY AS A LEADER OF AN ORGANIZATION OR A

21   CRIMINAL ASSOCIATION OR CONSPIRACY.  THE COURT SHOULD

22   CONSIDER THE EXERCISE OF DECISION-MAKING ABILITY, THE

23   NATURE OF PARTICIPATION IN THE COMMISSION OF THE OFFENSE,

24   THE RECRUITMENT OF ACCOMPLICES, THE CLAIMED RIGHT TO A

25   LARGER SHARE OF THE FRUITS OF THE CRIME, THE DEGREE OF

12

1    PARTICIPATION AND PLANNING OR ORGANIZING THE OFFENSE, THE

2    NATURE AND SCOPE OF THE ILLEGAL ACTIVITY, AND THE DEGREE

3    OF CONTROL AND AUTHORITY THAT HE EXERCISED OVER OTHERS.

4         IN THIS CASE THE DEFENDANT WAS A FULL PARTNER,

5    HE REAPED A THIRD SHARE OF THE FRUITS OF HIS CRIMES AND

6    WAS MADE PARTNER BECAUSE OF HIS CONNECTIONS IN

7    DISTRIBUTING CONTROLLED SUBSTANCES.  AS SUCH, HIS

8    PARTICIPATION PLAYED A LARGE ROLE IN THE PLANNING AND

9    ORGANIZING OF THE OFFENSE.  THE OTHER TWO PARTNERS COULD

10   NOT HAVE ACCOMPLISHED THE DISTRIBUTION ASPECT WITHOUT

11   HIM.

12        IN ADDITION, THAT'S WHY THEY OFFERED HIM A

13   PARTNERSHIP IMMEDIATELY UPON HIS RELEASE FROM

14   IMPRISONMENT.

15        WHILE HE'S RIGHT, THEY HAD THE BUYING POWER AND

16   THE DRUGS, THEY COULD DO NOTHING WITH THEM IF THEY HAD

17   NOWHERE TO DISTRIBUTE THEM.

18        REGARDING THE RECRUITMENT OF ACCOMPLICES, THEY

19   ALL SUPERVISED AT LEAST ONE MULE.  AS SUCH, THE DEFENDANT

20   SHARED EQUAL LEADERSHIP WITH EDDIE GARCIA AND DELVIN

21   LIVINGSTON, AND THEY USED THE SERVICES OF AT LEAST ONE

22   MULE, TIFFANY SHEPHARD, WHO WAS ANOTHER ONE OF THEIR

23   CONNECTIONS, AS WELL AS NUMEROUS BUYERS.

24        AND I FIND THE PROBATION OFFICER WAS CORRECT IN

25   ENHANCING THE DEFENDANT'S LEVEL BY TWO PURSUANT TO THE

1    DEFENDANT'S POSSESSING A FIREARM DURING THE OTHERWISE

2    EXTENSIVE CRIMINAL ACTIVITY, AND THAT THE PROBATION

3    OFFICER WAS ALSO CORRECT IN ENHANCING THE DEFENDANT'S

4    LEVEL BY FOUR AS A RESULT OF HIS ROLE IN THIS OTHERWISE

5    EXTENSIVE CRIMINAL ACTIVITY.

6           THEREFORE, THAT OBJECTION IS DENIED AND

7    OVERRULED.

8           I'LL MAKE MY FINDINGS FROM A PREPONDERANCE OF

9    THE EVIDENCE NOW ON THE PRESENTENCE REPORT, AND THAT IS

10   BASED UPON THE PRESENTENCE REPORT, THE EVIDENCE AT TRIAL,

11   AND I FIND THAT THE PRESENTENCE REPORT IS BASED UPON

12   INFORMATION OF SUFFICIENT RELIABILITY AND TRUSTWORTHINESS

13   THAT I CAN AND DO ADOPT IT AND RELY UPON IT AND FIND THAT

14   IT IS CORRECT.

15          PART "A", THE OFFENSE, CHARGES AND CONVICTIONS,

16   CO-DEFENDANT INFORMATION, THE OFFENSE CONDUCT, IS CORRECT,

17   AND I SO FIND, AND I FIND BY THE STANDARD THAT I EARLIER

18   ANNOUNCED.

19          I FURTHER FIND THAT THERE ARE NO IDENTIFIABLE

20   INDIVIDUAL VICTIMS OF THIS OFFENSE.

21          THE PROBATION OFFICER HAS NOT FURNISHED ANY

22   INFORMATION TO SUGGEST THE DEFENDANT HAS IMPEDED OR

23   OBSTRUCTED JUSTICE.

24          THERE IS NO ACCEPTANCE OF RESPONSIBILITY

25   INVOLVED IN THIS CASE.

14

1       THE 1993 EDITION OF THE GUIDELINES MANUAL HAS

2   BEEN USED IN THIS CASE, AND THE BASE OFFENSE LEVEL IS

3   FORTY-TWO.

4       THE DEFENDANT IS ACCOUNTABLE FOR THE EQUIVALENT

5   OF 4513 KILOGRAMS OF COCAINE POWDER.  1500 KILOGRAMS OR

6   MORE COCAINE POWDER YIELDS A BASE LEVEL, BASE OFFENSE

7   LEVEL OF FORTY-TWO.

8       SPECIFIC OFFENSE CHARACTERISTICS OF USING,

9   POSSESSING A DANGEROUS WEAPON INCREASES IT BY TWO, AS

10  INDICATED IN PARAGRAPH THIRTY-FIVE.

11      THERE ARE NO VICTIM-RELATED ADJUSTMENTS.

12      AS FOUND, WHICH I ADOPT, IN PARAGRAPH

13  THIRTY-SIX, THERE'S AN UPWARD ADJUSTMENT OF FOUR LEVELS

14  FOR ROLE IN THE OFFENSE, WHICH YIELDS A TOTAL OF

15  FORTY-EIGHT.

16      THERE IS NO ADJUSTMENT FOR OBSTRUCTION OF

17  JUSTICE.

18      THERE'S NO ADJUSTMENT FOR ACCEPTANCE OF

19  RESPONSIBILITY.

20      THE TOTAL OFFENSE LEVEL IS FORTY-EIGHT.

21      THERE ARE NO CHAPTER FOUR ENHANCEMENTS.

22      THE TOTAL OFFENSE LEVEL IS FORTY-EIGHT.

23      I FIND THAT PART "B", THE DEFENDANT'S CRIMINAL

24  HISTORY, IS CORRECT, IN THAT HE HAS TWO CONVICTIONS, AS

25  REFLECTED IN PARAGRAPH FORTY-FIVE AND IN PARAGRAPH

1   FORTY-SIX.  THAT GIVES A SUBTOTAL OF FOUR.

2          AT THE TIME OF THE INSTANT OFFENSE THE

3   DEFENDANT WAS ON PAROLE.  UNDER THE GUIDELINE PROVISION

4   OF 4(A)(1.1)(D), TWO POINTS ARE ADDED.

5          THE INSTANT OFFENSE WAS COMMITTED LESS THAN TWO

6   YEARS FOLLOWING THE DEFENDANT'S RELEASE FROM CUSTODY.

7   UNDER THE GUIDELINE, 4(A)(1.1)(E), ONE POINT IS ADDED.

8          THEREFORE, THE TOTAL OF THE CRIMINAL HISTORY

9   POINTS IS SEVEN, AND ACCORDING TO THE SENTENCING TABLE,

10  SEVEN CRIMINAL HISTORY POINTS ESTABLISH A CRIMINAL

11  HISTORY CATEGORY OF FOUR.

12          OTHER CRIMINAL CONDUCT WHICH IS REPORTED TO ME

13  AS NOTED IN PARAGRAPH FIFTY-ONE, I FIND IT WAS CORRECT TO

14  REPORT IT.  IT DOES NOT PLAY ANY PART IN HIS CRIMINAL

15  HISTORY CATEGORY, HOWEVER.

16          I FIND PART "C" AS TO HIS OFFENDER

17  CHARACTERISTICS ARE CORRECT, AND I SO FIND AND ADOPT

18  THOSE.

19          THE FINANCIAL CONDITION OR ABILITY TO PAY IS

20  CORRECT.

21          I FIND THAT THE MINIMUM TERM IS TEN YEARS

22  IMPRISONMENT.  THE MAXIMUM TERM IS NOT MORE THAN LIFE.

23          BASED UPON A TOTAL OFFENSE LEVEL UNDER THE

24  GUIDELINE PROVISIONS OF FORTY-EIGHT AND A CRIMINAL

25  HISTORY CATEGORY OF FOUR, THE ONLY GUIDELINE IMPRISONMENT

16

1  RANGE IS LIFE IMPRISONMENT, AND THIS WILL RUN

2  CONCURRENTLY WITH THE UNDISCHARGED STATE SENTENCE, AS THE

3  LIFE SENTENCE REPRESENTS THE TOTAL PUNISHMENT

4  IMPRISONMENT RANGE FOR ALL OFFENSES WHICH HAVE BEEN

5  PROSECUTED FEDERALLY.

6           IN THE EVENT THAT THE DEFENDANT IN SOME MANNER

7  IS RELEASED DURING THE TERM OF HIS NATURAL LIFE, A TERM

8  OF SUPERVISED RELEASE IS REQUIRED IF ANY SENTENCE OF

9  IMPRISONMENT IS IMPOSED.  IT'S EITHER THREE YEARS BUT NOT

10 GREATER THAN FIVE YEARS.  SINCE FIVE YEARS IS IMPOSED BY

11 STATUTE, THE TERM WILL BE FIVE YEARS.

12          THE DEFENDANT IS NOT ELIGIBLE FOR PROBATION,

13 SINCE IT'S A CLASS "A" FELONY, BOTH STATUTORILY AND UNDER

14 THE GUIDELINES.

15          THE MAXIMUM FINE IS FOUR MILLION DOLLARS.

16          A SPECIAL ASSESSMENT OF FIFTY DOLLARS IS

17 MANDATORY.

18          THE GUIDELINE FINE RANGE IS FROM TWENTY-FIVE

19 THOUSAND TO FOUR MILLION DOLLARS.

20          THERE ARE NO INDIVIDUAL VICTIMS OF THE OFFENSE.

21          RESTITUTION IS NOT AN ISSUE.

22          UNDER THE STATUTE AND THE GUIDELINES, I MAY

23 DENY CERTAIN ELIGIBILITY FOR THE DEFENDANT TO APPLY FOR

24 OR RECEIVE CERTAIN FEDERAL BENEFITS FOR ANYONE CONVICTED

25 OF DISTRIBUTION OR POSSESSION OF A CONTROLLED SUBSTANCE.

1    THERE ARE NO FACTORS THAT HAVE BEEN FORWARDED

2    TO ME WHICH WOULD WARRANT AN UPWARD, CERTAINLY NOT AN

3    UPWARD, BUT A DOWNWARD DEPARTURE.

4    I DO NOT KNOW WHETHER THE THE GOVERNMENT HAS

5    FILED OR INDICATED WHETHER IT HAS FILED A 5(K)(1) OR NOT.

6    MR. BALES:  WE HAVE NOT, YOUR HONOR, BUT

7    CONCERNING ANY FACTORS THAT THE COURT MIGHT CONSIDER --

8    THE COURT:  I UNDERSTAND THAT THERE WAS A -- I

9    SIGNED AN ORDER OF ALTERNATIVE CUSTODY, AND THEREFORE, I

10   WOULD PRESUME THAT THERE IS A POSSIBILITY OF A 35(B) IN

11   THE FUTURE.  I DO NOT KNOW.  IF IT'S FILED, I'LL ACT ON

12   IT.

13   MR. BALES:  WELL, WHATEVER IMPACT IT MAY HAVE

14   ON THE COURT'S DECISION TODAY, YOUR HONOR, ALTHOUGH IT'S

15   PREMATURE FOR US TO ASK FOR A FORMAL REDUCTION BASED ON

16   5(K)(1), AND WE'RE NOT PREPARED TO PRESENT A RULE 35 AT

17   THIS TIME, I WOULD WANT THE COURT TO KNOW THAT --

18   THE COURT:  WELL, YOU DON'T HAVE TO PUT IT IN

19   THE RECORD.

20   MR. BALES:  RIGHT.

21   THE COURT:  BUT YOU DID ASK FOR ALTERNATIVE

22   CUSTODY.  I PRESUME THAT THIS COULD LEAD TO THE

23   SUBSEQUENT FILING OF A 35(B), NOT NECESSARILY THAT YOU

24   WILL, BUT IT COULD.

25   MR. BALES:  RIGHT.  AND I ANTICIPATE, GIVEN THE

1   POSITIVE DEVELOPMENT SO FAR IN THAT AREA, THAT WE WILL

2   PROBABLY BE SEEING THE COURT, AND I THINK THERE'S BEEN A

3   REMARKABLE CHANGE IN THE RELATIONSHIP BETWEEN ROUTT AND

4   THE GOVERNMENT, AND IT'S TO THE POSITIVE FROM OUR POINT

5   OF VIEW.  I DID WANT THE COURT TO KNOW THAT, THAT HE HAS

6   EXPENDED SOME ENERGY AND DONE SOME THINGS WE'RE

7   INTERESTED IN, AND WE APPRECIATE IT.

8            I WAS JUST GOING TO SAY THOUGH, OUR POSTURE

9   WOULD BE THAT WE WOULD, IF IT'S APPROPRIATE WHEN IT'S

10  RIPE, WE WILL ASK TO REVISIT THIS IN SOME SORT OF RULE 35

11  RULING.

12           MS. BENSON:  AND I JUST WANT TO SAY, I HAD

13  SPOKEN WITH GARY HARRISON, I BELIEVE HE'S WITH THE DEA IN

14  WACO, AND HE HAD CALLED TO SAY THAT HE WANTED TO BE

15  PRESENT WITH THE COURT TODAY TO LET MR. ROUTT KNOW HOW

16  SUPPORTIVE HE WAS OF HIM, BUT HE DID HAVE TO GET BACK TO

17  WACO, AND IT WAS A FIVE-HOUR DRIVE, SO HE WASN'T ABLE TO

18  STAY FOR THE SENTENCING.

19           THE COURT:  WAIT A MINUTE.  HE'S GOT LIGHTS AND

20  ALL THAT SORT OF STUFF.  HE COULD HAVE MADE IT BACK.

21           MS. BENSON:  I THINK HE SAID HE HAD BEEN GONE A

22  WEEK AND WANTED TO GET BACK HOME, BUT HE DID WANT TO LET

23  ME KNOW THAT MR. ROUTT HAD BEEN COOPERATING, AND I

24  BELIEVE HE WAS EVEN TAKEN TO WACO TO TESTIFY IN A TRIAL,

25  BUT THAT TRIAL DID NOT GO FORWARD ON THAT DATE, AND THAT

1    HE HAS BEEN VERY COOPERATIVE.

2          BUT I AGREE WITH MR. BALES IN THE FACT THAT

3    THEY'VE NOT FINISHED OR COMPLETED THEIR INVESTIGATION,

4    HE'S STILL COOPERATING, AND THAT IT MAY BE PREMATURE NOW

5    TO ASK FOR A 5(K)(1), BUT WE'RE VERY HOPEFUL THAT THERE

6    WILL BE A RULE 35(B) BASED ON HIS COOPERATION AT THIS

7    POINT.

8          THE COURT:  ANYTHING YOU WISH TO SAY, MR.

9    ROUTT?

10          THE DEFENDANT:  WELL, YOU OVERRULED THE

11    DECISION ON THE PRESENTENCE INVESTIGATION STEMMING FROM

12    1987, WHEN I SUPPOSED TO HAVE BEEN A CO-CONSPIRATOR WITH

13    MR. LIVINGSTON.  I WAS NOT.

14          AND IT WAS IN THERE THAT I SUPPOSED TO HAVE

15    COOKED AN OUNCE OR TWO FOR HIM AND RANDLE, BUT NOW IT

16    INDICATES THAT I WAS A CONSPIRATOR, AND HE FORESEEN,

17    BELIEVED THAT ME AND MR. RANDLE, ANOTHER MR. RANDLE, NOT

18    THE ONE HE WAS TOGETHER WITH ON THE OUNCE OR TWO,

19    DISTRIBUTED FORTY-TWO, WHICH WAS EIGHTY-FIVE PERCENT

20    CRACK, WHICH THROWED ME UP TO THE FOUR THOUSAND AND

21    SOMETHING KILOGRAMS OF COCAINE.

22          I JUST WANTED TO SAY THAT IF I WOULD HAVE KNOWN

23    THAT THIS HERE WOULD HAVE BEEN ENHANCED ON MY BEHALF --

24          THE COURT:  MULTIPLIED BY A HUNDRED.

25          THE DEFENDANT:  YEAH.  BUT THE FACT --

20

1          THE COURT:  CONVERT POWDER TO CRACK.

2          THE DEFENDANT:  I UNDERSTAND PARTLY WHY I WAS

3     CONVICTED, BECAUSE HE HAD FOUR OTHER PEOPLE CORROBORATING

4     THE SAME STORY, WHICH IS A REASON OF A DOUBT TO BELIEVE,

5     BUT THERE WAS NO ONE TO CORROBORATE THIS STORY HERE, AND

6     THE PRESENTENCE OFFICER JUST INDICATED TO ASK HIM THAT,

7     AND THAT LET THAT STICK IN THERE, AND ABOUT THE GUN, YOU

8     KNOW, AND I FEEL LIKE IT WAS IRRELEVANT.

9          THE COURT:  WELL, YOU HAD EVERY OPPORTUNITY TO

10     TESTIFY.  YOU DIDN'T TESTIFY.  I DON'T KNOW WHETHER YOU

11     WANTED TO AND YOUR COUNSEL ADVISED YOU AGAINST IT.  I

12     UNDERSTAND THAT YOU HAD CERTAIN OPTIONS BEFORE YOU WENT

13     TO TRIAL THAT YOU REJECTED COMPLETELY.

14          THERE'S NOTHING IN THE WORLD -- I MEAN, IT

15     DOESN'T GIVE ME -- IF YOU THINK, IF ANYBODY THINKS IT

16     GIVES ME ANY PLEASURE TO LOOK AT ANOTHER HUMAN BEING AND

17     DETERMINE WHERE HE'S GOING TO SPEND TEN OR TWENTY OR

18     THIRTY YEARS OR THE REST OF HIS LIFE, YOU'RE ABSOLUTELY

19     WRONG.  IT GIVES ME NO PLEASURE, ANDREW, NONE AT ALL.

20          I SAID ANDREW --

21          THE DEFENDANT:  ANDRE.

22          THE COURT:  I HAVE A GRANDSON NAMED ANDREW.  MY

23     GRANDFATHER WAS NAMED ANDREW.  SO, I'M FAMILIAR WITH THE

24     NAME.  THEY PUT A "W" ON IT THOUGH INSTEAD OF LIKE YOU

25     DO.

1        NO.   THE HARDEST JOB ANY JUDGE HAS IS IMPOSING

2   A SENTENCE.   BUT I DON'T PASS THE LAWS, I DON'T MAKE THEM.

3   IT'S GOING TO GET WORSE.

4        THE DEFENDANT:   YES, SIR.

5        THE COURT:   MAYBE, MAYBE NOT, BUT IT COULD WELL

6   GET WORSE INSOFAR AS THE AMOUNTS OF PUNISHMENT THAT ARE

7   METED OUT, AND WE'RE REQUIRED TO FOLLOW THE GUIDELINES.

8        NOW, WHETHER THE GUIDELINES ARE A GOOD IDEA OR

9   A BAD IDEA IS IRRELEVANT.   MY JOB, AND I'M REQUIRED TO DO

10   IT WHEN I TAKE THE JOB, IS TO ENFORCE THE LAWS ENACTED BY

11   THE CONGRESS.

12        BEFORE 1987 THERE WEREN'T ANY GUIDELINES.

13   WELL, THERE WERE GUIDELINES OF A LOOSER SORT, BUT THEY

14   WEREN'T BINDING.   AND BECAUSE THE JUDGES OF THE UNITED

15   STATES COURTS IN VARIOUS PLACES HAD ABSOLUTE DISCRETION

16   TO SENTENCE ANYBODY TO ANYTHING, UP TO THE MAXIMUM, THERE

17   WAS A WIDE DIFFERENCE FOR THE SAME ACTIVITY, ONE GUY

18   MIGHT GET A YEAR'S PROBATION AND SOMEBODY ELSE TEN YEARS

19   IN PRISON, I MEAN, IT WAS JUST UP TO THE JUDGE, AND IT

20   SEEMED TOO WIDE A DISPARITY.   AND THEY DECIDED,

21   APPARENTLY UPON PRESSURE, OR WHAT THEY THOUGHT WAS

22   PRESSURE FROM THEIR CONSTITUENTS, THAT THERE OUGHT TO BE

23   A LITTLE BIT CLOSER REGULARITY.

24        WHEN THEY GOT TO THAT POINT, AFTER A LEVEL

25   FORTY-THREE, I HAVE NO DISCRETION.   IF I SENTENCE YOU TO

1    TWO HUNDRED MONTHS OR A HUNDRED MONTHS, HE CAN APPEAL,

2    AND I WOULD ALMOST BE REVERSED BY FAX, IT WOULD BE THAT

3    BAD.

4           I DON'T HAVE ANY RIGHT TO JUST SAY I WON'T

5    ENFORCE THE GUIDELINES.

6           WHEN I SAY I WON'T ENFORCE THE LAW, I MIGHT AS

7    WELL -- I HAVE AN OBLIGATION TO WALK OFF THIS BENCH AND

8    LEAVE IT.

9           THE DEFENDANT:  WELL, YOUR HONOR --

10          THE COURT:  I'VE GOT TO ENFORCE IT, ANDRE, BUT

11   IT DOESN'T GIVE ME ANY PLEASURE.

12          YOU'RE IN A POSITION NOW THAT -- I'LL JUST SAY

13   THIS, THAT THIS SENTENCE WILL CERTAINLY FOCUS YOUR

14   ATTENTION ON THE MATTERS AT HAND IN THE NEXT FEW MONTHS,

15   AND I PERSONALLY HOPE THAT I GET AN OPPORTUNITY TO PASS

16   ON A MOTION TO REDUCE IT.  I HAVE NO AUTHORITY AS TO THE

17   IMPOSITION OF SENTENCE NOW.

18          I WISH THAT THERE WASN'T SO MUCH, QUOTE, EASY

19   MONEY IN DRUGS, AN EASY LIFE STYLE, AND THAT -- YOU KNOW

20   LOTS OF PEOPLE THAT DO HONEST WORK AND THEY DON'T SEEM TO

21   GET AHEAD.  THEY DON'T EVER HAVE FRIENDS THAT ARE GOING

22   TO GIVE THEM A JAG WHEN THEY GET OUT OF PRISON, BUT

23   THEY'LL GIVE THEM SOME OTHER KIND OF SUPPORT, HELP, LOVE,

24   SOMETHING LIKE THAT, BUT NO '88 JAG JUST FOR DRIVING

25   HOME.

1       THE MATERIAL POSSESSIONS THAT YOU ONCE ENJOYED,

2  THEY'RE GONE, YOU KNOW THAT.  I CAN'T EVEN IMPOSE A FINE

3  ON YOU.

4       THE DEFENDANT:  YOUR HONOR, THE ONLY REASON I

5  BRUNG UP THE ISSUE IS THAT IN THE PRESENTENCE

6  INVESTIGATION I READ A HUNDRED AND FIFTY KEYS, AND I

7  SAID, WELL, THAT'S WHAT THEY HAD INFORMATION ON, PEOPLE

8  CORROBORATED THAT, BUT I LOOKED BACK AND I SEE THAT IN

9  '87 MR. LIVINGSTON INDICATED THAT IT WAS DRUGS THAT I WAS

10  DEALING, HE WAS A CO-CONSPIRATOR WITH ME THEN, WHICH HE

11  WASN'T, AND THAT'S THE SAME FILING THAT MADE ME UP TO

12  FOUR THOUSAND AND SOME KILOGRAMS OF COCAINE, WHICH WAS A

13  MANDATORY LIFE SENTENCE JUST ABOUT, OR IS, AND THAT'S WHY

14  IT'S KIND OF HARD FOR ME TO ACCEPT IT.

15       AND THEN HE COME UP AGAIN AND SAY HE SOLD ME A

16  GUN, BUT NONE OF THESE THINGS WAS MENTIONED IN TRIAL, AND

17  IT WAS JUST BLOWED ALL OUT OF PROPORTION, FROM A HUNDRED

18  KILOS, WHICH THEY WASN'T SURE ABOUT THAT.  YOU KNOW, IT

19  WASN'T --

20       THE COURT:  WELL, SEE, I HAVEN'T HEARD YOU

21  ADMIT ANYTHING ABOUT YOUR RESPONSIBILITY YET, NOT FROM

22  THE DAY THE JURY WAS SELECTED DOWN TO RIGHT NOW.

23       I'M GOING TO PRONOUNCE SENTENCE NOW, MR. ROUTT.

24       PURSUANT TO THE SENTENCING REFORM ACT OF 1984,

25  IT'S THE JUDGMENT OF THE COURT THAT THE DEFENDANT, ANDRE

24

1    DONNELL ROUTT, ALSO KNOWN AS ANDREW JOHNSON, IS HEREBY

2    COMMITTED TO THE CUSTODY OF THE BUREAU OF PRISONS, TO BE

3    IMPRISONED FOR A TERM OF LIFE.

4         THIS SENTENCE IS IMPOSED TO RUN CONCURRENT WITH

5    THE DEFENDANT'S CURRENT STATE IMPRISONMENT.

6         IF RELEASED FROM IMPRISONMENT, THE DEFENDANT

7    SHALL BE PLACED ON SUPERVISED RELEASE FOR A TERM OF FIVE

8    YEARS.

9         WITHIN SEVENTY-TWO HOURS OF RELEASE FROM THE

10   CUSTODY OF THE BUREAU OF PRISONS, THE DEFENDANT SHALL

11   REPORT IN PERSON TO THE PROBATION OFFICE IN THE DISTRICT

12   TO WHICH THE DEFENDANT HAS BEEN RELEASED.

13        WHILE ON SUPERVISED RELEASE, THE DEFENDANT

14   SHALL NOT COMMIT ANOTHER FEDERAL, STATE OR LOCAL CRIME,

15   SHALL COMPLY WITH THE STANDARD CONDITIONS THAT HAVE BEEN

16   ADOPTED BY THIS COURT, AND SHALL COMPLY WITH THE

17   FOLLOWING ADDITIONAL CONDITIONS:

18        THE DEFENDANT SHALL NOT ILLEGALLY POSSESS A

19   CONTROLLED SUBSTANCE.

20        THE DEFENDANT SHALL NOT POSSESS A FIREARM OR

21   OTHER DESTRUCTIVE DEVICE.

22        THE DEFENDANT SHALL PARTICIPTAE IN A PROGRAM OF

23   TESTING AND TREATMENT FOR DRUG ABUSE AS DIRECTED BY THE

24   PROBATION OFFICER UNTIL SUCH TIME AS THE DEFENDANT IS

25   RELEASED FROM THE PROGRAM BY THE PROBATION OFFICER.

1        IT'S FURTHER ORDERED THAT THE DEFENDANT SHALL

2   PAY TO THE UNITED STATES A SPECIAL ASSESSMENT OF FIFTY

3   DOLLARS.

4        THE DEFENDANT IS DENIED ELIGIBILITY TO APPLY

5   FOR OR RECEIVE FEDERAL BENEFITS FOR A PERIOD OF FIVE

6   YEARS FROM THE DATE OF THIS JUDGMENT.

7        THE DEFENDANT DOES NOT HAVE THE ABILITY TO PAY

8   A FINE AND THE COURT WILL WAIVE A FINE IN THIS CASE.

9        INVESTIGATION IN THIS CASE REVEALS THAT THE

10  DEFENDANT HAS BEEN INVOLVED IN HEAVY DRUG TRAFFICKING

11  SINCE THE MID-1980S.  AUTHORITIES HAVE TRACKED HIS DRUG

12  DEALINGS FROM 1987 TO MAY OF 1992.

13       THE DEFENDANT WAS INCARCERTAED IN 1990 AND

14  RELEASED IN 1991.  RELIABLE SOURCES INDICATE THE

15  DEFENDANT CONTINUED HIS DRUG-DISTRIBUTION ACTIVITIES

16  IMMEDIATELY FOLLOWING HIS RELEASE FROM INCARCERATION.

17       THE DEFENDANT WAS INVOLVED IN SEVERAL DRUG

18  CONSPIRACIES AND HELD DIFFERENT ROLES IN EACH.

19       AS A RESULT OF HIS INVOLVEMENT WITH MULTIKILO

20  QUANTITIES OF POWDER AND CRACK COCAINE, HIS MINIMUM

21  GUIDELINE IMPRISONMENT RANGE IS LIFE.

22       THIS TERM WILL APPROPRIATELY ADDRESS THE

23  SENTENCING OBJECTIVES OF PUNISHMENT, GENERAL DETERRENCE

24  AND INCAPACITATION.

25       A FIVE YEAR PERIOD OF SUPERVISED RELEASE IS

26

1    MANDATED AND WILL ALLOW THE PROBATION OFFICER AND THE

2    DEPARTMENT ADEQUATE TIME TO ADDRESS THE DEFENDANT'S

3    SUPERVISION NEEDS.

4             NO FINE IS ORDERED, AS THE DEFENDANT DOES NOT

5    HAVE THE ABILITY TO PAY A FINE.

6             YOU HAVE THE RIGHT TO APPEAL YOUR CONVICTION BY

7    A JURY IN THIS CASE.

8             YOU HAVE THE RIGHT TO APPEAL THE SENTENCE WHICH

9    HAS BEEN IMPOSED BY THIS COURT.

10             YOU HAVE THE RIGHT TO APPLY TO APPEAL THOSE IN

11   FORMA PAUPERIS.  IF YOU MAKE SUCH APPLICATION FOR THE

12   APPEAL IN FORMA PAUPERIS, THE APPLICATION WILL BE ACTED

13   ON PROMPTLY.

14             YOU'RE REMANDED TO THE CUSTODY OF THE UNITED

15   STATES MARSHAL.

16             THIS COURT IS IN RECESS.

17             THE MARSHAL:  ALL RISE.

18             (RECESS AT 5:02 P.M.)

19

20        I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

21   FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED

22   MATTER.

23

24   _____        ___9-7-94_____

25   WENDELL R. PARKS, CP, CM            DATE